United States District Court
Southern District of Texas
**ENTERED**
July 24, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| J.A. MASTERS INVESTMENTS, K.G. INVESTMENTS, and JEFFERSON CASTRO GUEVARA, | § § § § CIVIL ACTION NO. H-20-4367 |
| Plaintiffs, | § § *consolidated with* |
| v. | § § CIVIL ACTION NO. H-21-2150 |
| EDUARDO BELTRAMINI, | § § |
| Defendant. | § § |

**MEMORANDUM AND ORDER**

This case is about the business side of soccer, or futbol. The defendant, Eduardo Beltramini, was in the business of promoting and arranging professional soccer matches. The plaintiffs, J.A. Masters Investments, K.G. Investments, and Jefferson Castro Guevara, invested in some of those matches and separately contracted to buy a soccer-related business from Mr. Beltramini. The plaintiffs accused Mr. Beltramini of fraud and breach of contract; Mr. Beltramini counterclaimed against Mr. Castro Guevara for breach of contract.

The case went to trial before a 12-person jury in May 2023. It was not an easy trial. There were many claims and issues, and counsel for the plaintiffs complicated the proceedings by a series of missteps.[1] The court made every effort to shield the jury from all these issues. After granting in part and denying in part the defendant's motion for judgment as a matter of law, the court

---

[1] These missteps included failing to arrange for an interpreter for their witnesses; failing to have witnesses available to testify (even after the court accommodated counsels' scheduling requests); failing to follow the court's instructions to avoid argumentative objections before the jury; failing to follow the court's instructions on timing; and failing to show basic respect to the court, court staff, and opposing counsel. For these and other missteps, plaintiffs' counsel blamed the court, court staff, opposing counsel, and even the U.S. District Court for the District of New Jersey, which, they argued, routinely accepted that sort of behavior.

instructed the jury on the five remaining claims. (Docket Entry No. 86). As to those five claims, the jury was asked to decide thirteen issues (counting each subpart on the verdict form as a separate issue). (Docket Entry No. 91). The jury returned a unanimous verdict, finding in Mr. Beltramini's favor on the vast majority of the thirteen issues and finding for the plaintiffs on a few of the liability issues but awarding no damages. (Docket Entry No. 91).

The parties have taken opposing views on what the jury's answers mean for the legal claims raised. Both sides assert that they have succeeded on at least one claim that entitles them to recover their attorney's fees. Plaintiffs' counsel filed a motion for entry of judgment in their favor and a motion for attorneys' fees. (Docket Entry No. 98, 100). Mr. Beltramini filed a proposed final judgment, along with attorney affidavits and billing records, that grants judgment in his favor and awards compensatory damages and attorney's fees. (Docket Entry No. 97).

Having reviewed the record, the briefing, and the case law, the plaintiffs' motions for entry of judgment and for attorneys' fees are denied, and the defendant's motion for final judgment and an award of attorney's fees is granted. The court holds that, although the jury found for the plaintiffs on certain *issues*, the plaintiffs did not, as a matter of law, succeed on any *claims*. Under Texas law, the plaintiffs are not entitled to attorney's fees. The defendant did, however, succeed on his counterclaim. Accordingly, judgment is granted in favor of Mr. Beltramini for $175,000 in actual damages, plus pre-judgment and post-judgment interest. Having succeeded on his counterclaim for breach of contract, Mr. Beltramini is also entitled to attorney's fees. The court grants attorney's fees in the amount of $103,985.00. Final judgment is separately entered, and the reasons for these rulings are explained below.

**I.     Background**

This case arises out of a series of business deals between the parties. Mr. Beltramini owned Planet Futbol, a business that promoted professional soccer matches in Central and South America. J.A. Masters Investments and K.G. Investments entered into contracts with Planet Futbol to split the expenses and profits from a series of soccer matches scheduled to occur in 2018 and 2019. J.A. Masters Investments and K.G. Investments are owned by Mr. Castro Guevara. Mr. Castro Guevara separately entered into a Business Sale Agreement with Mr. Beltramini in October 2019. Under this contract, Mr. Beltramini agreed to sell Planet Futbol to Mr. Castro Guevara for $300,000.

The evidence showed that although Mr. Beltramini knew a lot about professional soccer, he knew less about business and accounting. Mr. Castro Guevara appeared to know neither soccer nor finance. Representing J.A. Masters Investments and K.G. Investments, Mr. Castro Guevara alleged that Mr. Beltramini committed fraud by overreporting the expenses he incurred on six separate soccer games. Mr. Castro Guevara also alleged that Mr. Beltramini breached the Business Sale Agreement by failing to fulfill certain requirements in the Agreement. Mr. Castro Guevara alleged that Mr. Beltramini failed to comply with Article 8, which required Mr. Beltramini to provide Mr. Castro Guevara with "any and all information required so that [Mr. Castro Guevara] may step into the shoes of [Mr. Beltramini] for the proper operation of the Business." Mr. Beltramini counterclaimed, alleging that Mr. Castro Guevara breached the Business Sales Agreement by paying him only $125,000 of the $300,000 agreed-upon purchase price for the business.

The court held a five-day jury trial in May 2023. When the trial began, there were eight claims:

1. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **June 2018 El Salvador v. Honduras** game.

2. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **March 2019 Peru v. Paraguay** game.

3. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **March 2019 Ecuador v. Honduras** game.

4. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **March 2019 Peru v. El Salvador** game.

5. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **June 2019 El Salvador v. Haiti** game.

6. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **September 2019 Peru v. Ecuador** game.

7. Mr. Beltramini alleges that Mr. Castro Guevara breached the Business Sale Agreement by only paying $125,000 out of the $300,000 he owed Mr. Beltramini.

8. Mr. Castro Guevara alleges that Mr. Beltramini breached the Business Sale Agreement by failing to provide the required information under Article 8 of the contract.

After the plaintiffs rested, the court heard argument on the defendant's motion for judgment as a matter of law under Rule 50(a). At that time, the plaintiffs abandoned the following claim:

6. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **September 2019 Peru v. Ecuador** game.

4

The court granted judgment as a matter of law in favor of Mr. Beltramini on the following two claims:

> 4. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **March 2019 Peru v. El Salvador** game.
>
> 7. Mr. Beltramini alleges that Mr. Castro Guevara breached the Business Sale Agreement by only paying $125,000 out of the $300,000 he owed Mr. Beltramini.

The court granted judgment as a matter of law on the fraud claim for the **Peru v. El Salvador** game. The claim, under Texas law, required proof of a material misrepresentation made with knowledge or reckless disregard of its falsity. *See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (the elements of fraud under Texas law are: (1) "a material representation that was false"; (2) knowledge that the statement was false or reckless disregard for its truth or falsity; (3) intended to induce action; and (4) actual and justifiable reliance on the statement and a resulting injury).

For the **Peru v. El Salvador game**, the basis for the alleged material misrepresentation was a projected expense statement. The statement was clearly labeled as a projection. The court ruled that a "projection" of costs is, by definition, an estimate, and the mere fact of a difference between the projected costs and the actual costs was not sufficient, as a matter of law, to show a misrepresentation, much less a material one, on which Mr. Castro Guevara could have reasonably relied. Moreover, even if the plaintiffs had presented evidence that the projected expense reports were misrepresentations (they did not), the plaintiffs offered no evidence that Mr. Beltramini made the statements with knowledge or reckless disregard of their falsity. Knowledge and reckless disregard are high standards. The lack of evidence combined with the high standard meant that, as a matter of law, "a reasonable jury would not have a legally sufficient evidentiary basis" to

conclude that Mr. Beltramini defrauded the plaintiffs as to that game. The court, therefore, granted Mr. Beltramini's Rule 50(a) motion on the claim of fraud as to the **Peru v. El Salvador** match.

The court also granted judgment as a matter of law on Mr. Beltramini's breach of contract claim. The basis for that claim was Article 4 of the Business Sale Agreement, which provided:

> Article 4 – Payments:
>
> [Mr. Castro Guevara] will pay $100,000.00 (one-hundred-thousand US dollars) on the Closing Date.
>
> The remaining Purchase Price of $200,000.00 (two-hundred-thousand US dollars) shall be paid by Buyer as follows:
>
> a) $100,000.00 (one-hundred-thousand US dollars) due immediately upon completion of the first Event under ownership of PFEM for an Event as contemplated by this agreement herein.
>
> b) $100,000.00 (one-hundred-thousand US dollars) due immediately upon completion of the second Event under ownership of PFEM for an Event as contemplated by this agreement herein.
>
> The entire Purchase Price must be paid in full no later than July 1, 2020, notwithstanding Art. 4(a)-(b).

It was undisputed that Mr. Castro Guevara paid Mr. Beltramini $100,000 on the closing date, and later paid an additional $25,000. It was also undisputed that some of the scheduled matches referred to in the Agreement were cancelled due to Covid-19. The plaintiffs argued that the occurrence of these matches was a condition precedent that did not happen, so the plaintiffs did not owe the defendant anything. Alternatively, the plaintiffs argued that the provision was invalid. Mr. Beltramini argued that the final clause in Article 4—"The entire Purchase Price must be paid in full no later than July 1, 2020, notwithstanding Art. 4(a)-(b)."—meant that he was owed the entire purchase price regardless of the occurrence of the scheduled matches.

6

"Contract interpretation is a purely legal issue." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004). The court determined that, under Texas law, the provision was valid and did not require the occurrence of the scheduled games as a condition precedent. "In construing a contract, the thing of first importance is the language of the contract itself." *Gallup v. St. Paul Ins. Co.*, 515 S.W.2d 249, 250 (Tex. 1974). The court determined that the provision requiring the purchase price to be paid in full by July 1, 2020, "notwithstanding" the occurrence of the events, meant what it plainly stated—the money was due to Mr. Beltramini even if those events did not occur. *Cf. Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) ("In order to make performance specifically conditional, a term such as 'if,' 'provided that,' 'on condition that,' or some similar phrase of conditional language must normally be included. If no such language is used, the terms will be construed as a covenant in order to prevent a forfeiture." (quoting reference omitted)). Because it was undisputed that Mr. Castro Guevara did not pay the remaining purchase price by July 1, 2020, the court held that Mr. Castro Guevara materially breached the Business Sale Agreement.

The remaining five claims were sent to the jury. Those claims were the following:

1. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **June 2018 El Salvador v. Honduras** game.

2. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **March 2019 Peru v. Paraguay** game.

3. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **March 2019 Ecuador v. Honduras** game.

5. J.A. Masters Investments and K.G. Investments allege that Mr. Beltramini defrauded them by misrepresenting expenses in the **June 2019 El Salvador v. Haiti** game.

8. Mr. Castro Guevara alleges that Mr. Beltramini breached the Business Sale Agreement by failing to provide the information required under Article 8 of the contract.

The jury was asked to answer questions with multiple subparts. Those answers are now a matter of dispute.

## II.     Post-Trial Judgment Disputes

### A.     The Fraud Claims

Question 1 asked the jury: "Did Eduardo Beltramini commit fraud against J.A. Masters Investments and K.G. Investments relating to any of the four soccer games for which they had an agreement?"  Question 1 was split into four subparts so that the jury could answer "Yes" or "No" for each of the four games at issue. The jury was instructed to "[c]onsider each game separately" and that each element of fraud must be proven by a preponderance of the evidence for each game. (Docket Entry No. 86, at 12).

The jury was instructed that the elements of fraud were as follows:

| | | |
|---|---|---|
| *First*: | | Mr. Beltramini made a material misrepresentation as to the expenses he paid for each game at issue; |
| *Second*: | | Mr. Beltramini made that misrepresentation with knowledge of its falsity or recklessly without any knowledge of the truth; |
| *Third*: | | Mr. Beltramini made that misrepresentation with the intention that it should be acted on by J.A. Masters and K.G. Investments; and |
| *Fourth*: | | J.A. Masters and K.G. Investments justifiably relied on the misrepresentation and suffered an injury. |

(Docket Entry No. 86, at 11–12). Consistent with Texas law and the Texas Pattern Jury Charges, the fourth element specified that the plaintiffs must suffer an injury.

8

The jury was tasked with answering Question 2 only if it found, in its answer to Question 1, that all the elements of fraud had been met. The predicated Question 2 asked the jury to determine compensatory damages—that is, to quantify the injury to the plaintiffs that the jury had found. (Docket Entry No. 91, at 2). The jury was instructed that "[t]he purpose of compensatory damages is . . . to compensate the plaintiff for the damage that the plaintiff has suffered. You may award compensatory damages only for injuries that J.A. Masters and K.G. Investments prove were proximately caused by Mr. Beltramini's allegedly wrongful conduct." (Docket Entry No. 86, at 15–16). Question 2 was also split into 4 subparts, one for each game at issue. (Docket Entry No. 91, at 2).

The jury returned a unanimous verdict on each of the questions they answered. (Docket Entry No. 91). On Question 1, which asked the jury whether Mr. Beltramini committed fraud on the four games at issue, the jury answered "Yes" as to three games (El Salvador v. Honduras, Peru v. Paraguay, and Ecuador v. Honduras) and "No" as to one game (El Salvador v. Haiti). (Docket Entry No. 91, at 1). On Question 2, which asked the jury to quantify the injury in dollars that the plaintiffs incurred, the jury answered "$0" as to each of the four games. (Docket Entry No. 91, at 2).

The plaintiffs argue that there "is an inherent contradiction" in the jury's answers to those two questions. (Docket Entry No. 107, at 2). By answering "Yes" to whether Mr. Beltramini committed fraud in Question 1, the jury concluded that all the elements of fraud had been met, and injury is one of the elements of fraud. But by answering "$0" to the amount in compensatory damages in Question 2, the jury concluded that the plaintiffs suffered no injury. The plaintiffs argue that the "only explanation is that [the jury] did find injury and damages but failed to calculate

9

or did not know how to calculate it despite all the evidence submitted." (Docket Entry No. 107, at 2).

The court disagrees. The jury was instructed on how to calculate damages, including instructions directing the jury to the parties' exhibits most relevant to damages. (Docket Entry No. 86, at 17). The jury was instructed that "[c]omputing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork." (Docket Entry No. 86, at 16). Early in the deliberations, the jury requested and received a calculator, even though the jury was also instructed that "the law does not require that the plaintiff prove the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit." (Docket Entry No. 86, at 16). Finally, the court instructed the jury it could submit written questions to the court during deliberations. (Docket Entry No. 86, at 21). The jury took advantage of this procedure, asking the court about the interpretation of a provision of the Business Sale Agreement. (Docket Entry No. 92). The jury did not submit any questions about the calculation of damages.

It is implausible that the jury's findings resulted from the jury not knowing, as the plaintiffs argue, how to calculate damages. But there is an inconsistency in the jury's answers to Question 1 and Question 2. When the jury's answers "to the questions propounded by the court" are "[in]consistent with each other," "it is the duty of the district judge to attempt to harmonize the jury's answers, if it is at all possible under a fair reading of the responses." 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2510 (3d ed. 1998 & Supp. 2023) (footnote omitted). "Indeed, this effort is required by the Seventh Amendment." *White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987); *see also Hiltgen v. Sumrall*, 47 F.3d 695, 701 (5th

10

Cir. 1995) ("[W]e are constitutionally required under the Seventh Amendment to adopt a view of the case that makes the jury's answers consistent.").

"The touchstone in reconciling apparent conflict is whether 'the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted.'" *White*, 809 F.2d at 1161 (quoting *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir.1973)). "Such reconciliation must be done 'in light of the surrounding circumstances, including the instructions of the court.'" *Davis v. W. Cmty. Hosp.*, 755 F.2d 455, 465 (5th Cir. 1985) (quoting reference omitted). The goal is to "effectuate best the intent of the jury." *White*, 809 F.2d at 1161.

The jury's intent is clear and its answers can readily be reconciled. In answering "Yes" to the fraud question, the jury found that four elements had been satisfied: (1) the existence of a material misrepresentation; (2) knowledge or reckless disregard; (3) intent; and (4) justifiable reliance. In answering "$0" to the damages question, the jury found that the final element of fraud, (5) a quantifiable amount of injury, had *not* been satisfied. In other words, the jury did not understand a quantifiable amount of an injury to be a separate element that needed to have been decided in Question 1.

In drafting the jury instructions, the court used the Texas Pattern Jury Charges. Consistent with the case law, those instructions set out only four elements of fraud:

Fraud occurs when—

1. a party makes a material misrepresentation, and

2. the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion, and

3. the misrepresentation is made with the intention that it should be acted on by the other party, and

11

      4.    the other party [*justifiably*] relies on the misrepresentation and thereby suffers injury.

STATE BAR OF TEX., TEX. PATTERN JURY CHARGES—BUS., CONSUMER, INS. & EMP. § 105.2 (2022) [hereinafter TEX. PATTERN JURY CHARGES]; *accord, e.g.*, *Ernst & Young*, 51 S.W.3d at 577; *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019). *But see, e.g.*, *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018) (describing fraud as having five elements, instead of four); *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 557 (Tex. 2019) (same).

So, consistent with those pattern instructions and the majority of the cases, the court instructed the jury that there were four elements of fraud under Texas law. The jury was instructed that the fourth and final element is that "J.A. Masters and K.G. Investments justifiably relied on the misrepresentation and suffered an injury." (Docket Entry No. 86, at 12). That instruction was followed by a definition of justifiable reliance. There was not a separate definition for injury. (Docket Entry No. 86, at 12); *see also* TEX. PATTERN JURY CHARGES § 105.2 & following commentary.

But, in truth, there are five elements of fraud. The last element—"the other party justifiably relies on the misrepresentation and thereby suffers injury"—has two parts: justifiable reliance and injury. The jury followed the Pattern Jury Charges instruction that there are four elements of fraud, with the final or fourth element of fraud that of justifiable reliance. The jury's answers made it clear that it did not consider a specific amount of injury as a separate requirement in answering Question 1.

This reading of the jury's answers is consistent with the trial record. The basis for the plaintiffs' fraud claims was that, for each of the identified soccer matches that were played,

12

Mr. Beltramini overstated the expenses he incurred. Because the plaintiffs and Mr. Beltramini split the expenses and profits, overstating the expenses would mean that the plaintiffs would spend more money on each game and end up with less overall profit. But what the trial record showed is that Mr. Beltramini, who handled the accounting himself and admittedly did not keep good track of the financial records relating to the games, actually *underreported* the expenses he incurred. This meant that Mr. Beltramini lost money in the process and that the plaintiffs ended up with *more* overall profit than they would have if Mr. Beltramini had been accurate in reporting the expenses. So, when asked to quantify the plaintiffs' injury, the jury responded, consistent with the trial record, $0.

Finally, even if the plaintiffs are correct that the jury was confused about calculating damages (which the record does not support), the tie breaker is the burden of proof. The plaintiffs had the burden of proving each element of their fraud claim by a preponderance of the evidence. Based on the trial record, and the jury's conclusion that the plaintiffs incurred $0 in damages, the plaintiffs did not establish injury by a preponderance of the evidence. The plaintiffs are not entitled to judgment on the fraud claims.

### B. The Breach of Contract Claims

There were two breach of contract claims. One was Mr. Beltramini's claim that Mr. Castro Guevara did not pay him the full price set out in the Business Sale Agreement for Mr. Castro Guevara to purchase Planet Futbol. The other was Mr. Castro Guevara's claim that Mr. Beltramini violated the Business Sale Agreement by not providing him with the information and training required in the Agreement. The court granted Mr. Beltramini's Rule 50(a) motion on his breach of contract claim. But the court also held that Mr. Castro Guevara's breach could be excused if the jury found that Mr. Beltramini materially breached the Business Sale Agreement before July

1, 2020. The jury was asked whether Mr. Beltramini breached the Business Sale Agreement and, if the jury so found, whether Mr. Beltramini's breach occurred before Mr. Castro Guevara was obligated to pay the balance of the purchase price. The jury found that Mr. Beltramini did not materially breach the Business Sale Agreement at any point, so they did not reach the question of whose breach occurred first. (Docket Entry No. 91, at 5).

The court did not send the question of Mr. Beltramini's damages on his breach of contract claim to the jury because there was no disputed factual issue for the jury to decide. The parties agreed repeatedly that (1) Mr. Castro Guevara bought Planet Futbol for $300,000 and (2) Mr. Castro Guevara only paid Mr. Beltramini $125,000. Because these facts were undisputed, the damages amount was $175,000.

The plaintiffs raise two sets of additional arguments to make the point that Mr. Beltramini is not entitled to judgment in his favor on the breach of contract claim. The first set of arguments concerns the validity of the Business Sale Agreement. The plaintiffs argue that Mr. Beltramini is not entitled to judgment because the Business Sale Agreement was unconscionable, both procedurally, (Docket Entry No. 106, at 7–10), and substantively, (Docket Entry No. 106, at 10–18). There are several problems with this argument. First, the court already determined that the provisions in Article 4 of the Business Sale Agreement were valid. The plaintiffs cannot avoid that ruling by now arguing (for the first time, in a post-trial responsive brief) that the Agreement was unconscionable. The issue is waived.

Second, the plaintiffs brought a breach of contract claim against Mr. Beltramini, meaning that they believed a valid contract existed. Having lost their breach of contract claim, the plaintiffs now raise, for the first time, a fraudulent inducement argument that Mr. Castro Guevara was tricked into signing the Business Sale Agreement, making it invalid. The evidence showed that Mr. Castro

14

Guevara knowingly signed the Agreement, after it was translated into Spanish and after he had the opportunity to read it and seek advice or counsel. The jury determined that Mr. Beltramini did not breach the Agreement. The court has determined that, as a matter of law, Mr. Castro Guevara did. This argument provides no basis to disturb either finding.

The next set of arguments concerns the damages calculation. The plaintiffs argue that Mr. Beltramini is not entitled to $175,000 in damages because: (1) Mr. Beltramini failed to mitigate his damages, (Docket Entry No. 106, at 3–6); (2) Mr. Beltramini did not suffer any damages because he himself breached the contract and gained from that breach, (Docket Entry No. 106, at 18–23); and (3) "The question on damages as it related to counter-plaintiff Mr. Beltramini never went to the jury. No other questions related to damages were presented to the jury or to this Court," (Docket Entry No. 106, at 2). Each argument is separately addressed.

First, this is the first time that the plaintiffs have raised a failure to mitigate issue. That argument is both waived and without a basis in the trial evidence. Second, the jury determined that Mr. Beltramini did not breach the contract, and the plaintiffs cannot relitigate that issue. Third, the question of damages did not need to go to the jury because the relevant numbers were the amount that Mr. Castro Guevara agreed to pay to buy Planet Futbol ($300,000) and the amount he actually paid ($125,000). *See Mays v. Pierce*, 203 S.W.3d 564, 577 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The normal measure of damages in a breach-of-contract case is the benefit-of-the-bargain measure, the purpose of which is to restore the injured party to the economic position it would have been in had the contract been performed."). Those two numbers—the $300,000 and $125,000—were undisputed. There was no question of disputed fact to send to the jury on Mr. Beltramini's damages.

Mr. Beltramini succeeded on his breach of contract claim and is entitled to $175,000 in compensatory damages.

### III. Attorneys' Fees

The next issue is attorneys' fees. The plaintiffs argue that they are entitled to fees because they succeeded on their fraud claims. As explained above, the jury's determination that the plaintiffs suffered no damages means that the plaintiffs did not succeed on those claims. Even if they had, the plaintiffs still would not be entitled to attorneys' fees.

"[A]ttorney's fees are recoverable only if authorized by statute or by a contract between the parties." *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). The Business Sale Agreement has no provision for attorney's fees, and under Texas law, success on a fraud claim is not a basis for attorney's fees. *See, e.g.*, *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006) ("For fraud, [the plaintiff] could recover economic damages, mental anguish, and exemplary damages, *but not attorney's fees*." (emphasis added)). Even if a fraud claim arises out of a breach of contract, Texas law is conclusive that success on a fraud claim does not create an entitlement to fees. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 667 (Tex. 2009) ("We explicitly rejected this intertwining exception in *Tony Gullo Motors I, L.P. v. Chapa* and reiterated that fees are not allowed for torts like fraud. Thus, even if the Woodlands' fraud claim arose from a breach of contract, that is no basis for an attorney's fee award." (footnote omitted)). The plaintiffs' attorneys are not entitled to fees.

Mr. Beltramini's attorneys, however, are entitled to fees. The Texas Civil Practice and Remedies Code allows for the recovery of attorney's fees for a litigant who succeeds on a breach of contract claim. TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). "To recover fees under this statute, a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover

damages." *MBM Fin. Corp.*, 292 S.W.3d at 666.  Mr. Beltramini did prevail on his breach of contract claim and is entitled to $175,000 in damages from that breach.  Both elements for attorney's fees under § 38.001(b)(8) have been satisfied.

As to the amount, the calculation of reasonable attorney's fees is a two-step process. *See Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir. 1998).  First, the court calculates a "lodestar." *Id.*  "In determining the appropriate amount of attorney's fees, a district court first must calculate the 'lodestar' by 'multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers.'" *Rodney v. Elliott Sec. Sols., L.L.C.*, 853 F. App'x 922, 924 (5th Cir. 2021) (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)).  Whether an hourly rate is reasonable depends on whether that rate is consistent with the "hourly rate in the community for the work at issue." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).  That said,

> determining an appropriate 'market rate' for the services of a lawyer is inherently difficult. . . . The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm.  Accordingly, the hourly rates of lawyers in private practice also vary widely.

*Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

"The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'  Cases may be overstaffed, and the skill and experience of lawyers vary widely." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (quoting reference omitted). Additionally, the court considers whether the attorneys demonstrated adequate billing judgment by writing "off unproductive, excessive of redundant hours." *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996); *see also Hensley*, 461 U.S. at 434 ("Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are

excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.").

Second, the court considers whether the circumstances of the case warrant an upward or downward lodestar adjustment. *Migis*, 135 F.3d at 1047. To determine whether "appropriate adjustments to the lodestar are necessary," the court "examine[s] the *Johnson* factors." *Rodney*, 853 F. App'x at 924 (citing *Migis*, 135 F.3d at 1047). The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, at 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 91–93 (1989). "[T]he most critical factor in determining an attorney's fee award is the degree of success obtained." *Hensley,* 461 U.S. at 436. "This factor is particularly crucial when plaintiffs only 'prevail' on some of their claims." *Id.* at 434.

If the district court determines that an adjustment is necessary, "no precise rule or formula" governs how that adjustment should be made. *Id.* at 436. "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment." *Id.* at 436–37. "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing

18

perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Courts are guided by "their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

Mr. Beltramini requests $103,985.00 in attorney's fees and expenses. (Docket Entry No. 97-3, at 1). Mr. Beltramini had two attorneys: Brock Akers and Cortd Akers. Both attorneys have extensive litigation experience; Brock Akers has been a trial lawyer since 1981, and Cortd Akers since 2012. They both billed at an hourly rate of $350 per hour, below their usual rate. Whether an hourly rate is reasonable depends on whether that rate is consistent with the "hourly rate in the community for the work at issue." *Smith & Fuller, P.A.*, 685 F.3d at 490. "In other cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners." *Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08-CV-1556-B, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011) (collecting cases). Given the numerous issues and disputes before and during trial, the court finds the hourly rate reasonable.

Both attorneys submitted affidavits and billing records showing that Mr. Brock Akers billed 183.4 hours from February 2021 through trial in May 2023 and that Mr. Cordt Akers, who came in to help with the trial, billed 110.7 hours in May 2023. They also request $1,050 in fees for the work done by a legal secretary. The court has reviewed the attorney time records and finds the hours expended reasonable.

Nothing about this case warrants a downward adjustment, and no other adjustment was requested. Mr. Beltramini is, accordingly, entitled to $103,985.00 in attorney's fees and expenses.

### IV. Conclusion

The plaintiffs' motions, (Docket Entry Nos. 98, 100), are denied. Judgment is granted in favor of Mr. Beltramini for $175,000 in actual damages, plus pre-judgment interest accruing as of December 29, 2020, at a rate of 8.25%, and post-judgment interest accruing as of the date of this

19

judgment, at a rate of 5.36%. Having succeeded on his claim for breach of contract, Mr. Beltramini is also entitled to attorneys' fees. The court grants attorney's fees in the amount of $103,985.00. Each party is to bear its own costs of court.

Final judgment will be entered separately. The notice of appeal, (Docket Entry No. 95), will be effective as of the date of the entry of the final judgment. *See* FED. R. APP. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.").

SIGNED on July 24, 2023, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge